GRIFFIS, P.J.,
for the Court:
¶ 1. Eaton Corporation and Old Republic Insurance Company, the employer and carrier (collectively “Eaton”), appeal the decision of the Mississippi Workers’ Compensation Commission that awarded benefits to Bobby Brown.
FACTS
¶ 2. On April 10, 2007, Brown injured his left shoulder and cervical spine in a com-pensable work accident that occurred when he was lifting a bucket of lapping compound. At the time of his injury, Brown was fifty-two years old and was employed in the finishing cell operating a small spinning lathe. Following his injury, Brown continued to work for Eaton until August 6, 2007, at which point he first began losing time from work.
¶ 3. Dr. Michael Dulske treated Brown. Brown underwent a left-shoulder arthros-copy with repair of labral tear, decompression, distal clavicle excision, and rotator cuff repair on August 28, 2007, and a capsular release and biceps tenotomy on March 11, 2008.
¶ 4. On November 5, 2007, Brown commenced a workers’ compensation action *1134 when he filed a petition to controvert. Brown alleged that he had sustained a left-shoulder injury.
¶ 5. On April 27, 2009, Dr. Dulske placed Brown at maximum medical improvement (MMI) for the left shoulder.
¶ 6. On May 1, 2009, Brown filed an amended petition to controvert to add a claim for injury to his cervical spine. The spine injury was initially denied. After the review of additional medical evidence, the spine injury was admitted to be a compensable injury.
¶7. On October 12, 2009, Dr. Dulske assigned a twenty percent impairment to the left upper extremity and stated that Brown was incapable of sedentary work on a sustained and full-time basis.
¶ 8. On August 10, 2009, Brown underwent a C6-7 anterior cervical diskectomy and fusion by Dr. Eric Amundson. Dr. Amundson last saw Brown on December 1, 2009, at which time he sent Brown for a cervical MRI to confirm the efficacy of the surgical procedure. Pending the results of the MRI, Dr. Amundson stated Brown should be evaluated by a physiatrist and undergo a functional capacity evaluation (FCE) to set permanent work restrictions and an impairment rating. Unless the MRI was found to be problematic, Dr. Amundson had completed his treatment of Brown.
¶ 9. The cervical MRI was performed on December 21, 2009. It was satisfactory, so Dr. Amundson referred Brown for a FCE on January 21, 2010. Brown failed to attend the scheduled FCE. Brown complained that his mileage was not prepaid. Brown admitted that the following day he was observed on surveillance footage driving his truck around town.
¶ 10. On January 14, 2010, Brown submitted an application for a lump-sum payment of permanent partial disability benefits, pursuant to Mississippi Code Annotated section 71-337(10) and Mississippi Workers’ Compensation Commission Procedural Rule 13. The Commission entered an order, on February 22, 2010, that authorized the lump-sum payment. Eaton was ordered to pay forty weeks of permanent partial disability benefits at $387.68 per week, beginning on January 21, 2010.
¶ 11. On February 22, 2010, the Commission entered an order that authorized the lump-sum payment and directed Eaton to pay forty weeks of permanent partial disability benefits at $387.68 per week from January 21, 2010, to completion.
¶ 12. Brown attended an FCE on March 9-10, 2010. Before this FCE, Brown got an infection in his toenail, and the doctor removed it. Nevertheless, Brown went to the FCE and completed the first part of the evaluation. His foot caused him discomfort, and he had to stop the evaluation. He showed his foot to the therapist, and he was sent home. Subsequently, he was hospitalized and had surgery.
¶ 13. On April 14, 2010, Brown filed a second amended petition to controvert and alleged an injury to his foot as the result of an aggravation of a preexisting foot injury.
¶ 14. Brown also missed his appointment that Dr. Amundson had scheduled with the physiatrist. Brown was to be evaluated by Dr. David Collipp on May 6, 2010. Brown appeared for the appointment with his attorney, but they left without being seen by the physician.
¶ 15. On April 15, 2010, Brown filed a motion to compel temporary total disability payments. On May 10, 2010 the administrative judge (AJ) granted Brown’s motion and compelled Eaton to pay temporary total disability benefits as of March 12, 2010.
*1135 ¶ 16. On May 12, 2010, Dr. William Geissler, an orthopaedic surgeon at University Medical Center, examined Brown. His evaluation was based on the history and physical examination of Brown, medical records of Dr. Dulske, Dr. Geissler’s previous independent medical exam (IME) for Brown’s long-term disability provider, the FCE, and surveillance video. Dr. Geissler opined that Brown could sit or stand for eight hours. He could also walk. Brown could easily elevate his arm to ninety degrees. Brown can lift from the floor to his waist ten pounds and from his waist to eye level five pounds. He can front carry fifteen pounds, right carry twenty pounds, and left carry ten pounds.
¶ 17. Dr. Geissler determined that Brown would be restricted from overhead lifting but would have no restriction in his lower extremity, in terms of his ability to stand or walk for prolonged periods of time. However, Dr. Geissler noted that he would defer to Dr. Amundson’s opinion as to whether there would be any restrictions to Brown’s lower extremity because of his cervical spine.
¶ 18. Eaton appealed the AJ’s May 10, 2010 order to the Commission. On November 19, 2010, the Commission vacated the order and remanded the matter for further proceedings.
¶ 19. On October 12, 2011, the AJ entered an order that found Brown was permanently totally disabled. The AJ concluded that, although no physician specifically said Brown has reached MMI, it appeared Brown had reached a plateau in medical treatment by the time of the FCE on March 9-10, 2010. The AJ also ordered sanctions against Eaton, in the amount of $1,000 for the attorney’s fees and expenses.
¶ 20. On October 24, 2011, Eaton appealed the AJ’s order. On May 2, 2012, the Commission entered an order that affirmed the award of permanent total disability benefits and reversed the award of sanctions. The Commission clarified that a finding of permanent total disability could be based entirely on Brown’s scheduled-member injury alone without regard to any restrictions related to his cervical injury. The Commission also concluded that because it found that permanent total disability was supported by substantial evidence and because the AJ had awarded permanent total disability benefits from the date of Brown’s injury, Eaton’s argument about the date of MMI was moot.
¶ 21. Brown’s employment was terminated because he had been on disability for twelve months and had no ability to return to work. Eaton offered Brown a scanner position, which Dr. Dulske said he could not perform. As of January 21, 2010, Brown had no outstanding job offer other than the scanning job.
¶22. Brown searched for a job and produced a log that documented his efforts. The log indicated he began looking for employment in May 2011. He applied at nine places for various positions. He told the potential employers of his limitations, and they did not offer him a job.
STANDARD OF REVIEW
¶ 23. The standard of review for a workers’ compensation appeal is well established. This Court will not disturb the Commission’s decision unless it was “not supported by substantial evidence.” Short v. Wilson Meat House, LLC, 36 So.3d 1247, 1250 (¶ 17) (Miss.2010). The supreme court has explained the “substantial-evidence standard”:
Review is limited to a determination of whether or not the decision of the [Cjommission is supported by substantial evidence. If so, the decision of the [Cjommission should be upheld. The [appellate court] acts as a court of re *1136 view and is prohibited from hearing evidence or otherwise evaluating evidence and determining facts.
Id. at 1250-51 (¶ 18) (quoting Delta CMI v. Speck, 586 So.2d 768, 772-73 (Miss.1991)). The supreme court has further defined substantial evidence:
[Substantial evidence means something more than a “mere scintilla” of evidence, and that it does not rise to the level of a preponderance of the evidence. It may be said that it means such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Substantial evidence means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred.
Short, 36 So.3d at 1251 (¶ 19) (quotation marks omitted) (quoting Speck, 586 So.2d at 773).
¶ 24. Our standard of review in workers’ compensation cases is highly deferential to the Commission’s decision. Id. at (¶ 23). Because the Commission is the fact-finder and also the judge of witness credibility, we cannot reweigh the evidence. Id. Appellate courts are not “empowered to determine where the preponderance of the evidence lies when the evidence is conflicting.” Id. This Court will review questions of law de novo. Id.
ANALYSIS
¶ 25. Eaton’s brief identified six issues for review. The argument section of Eaton’s brief, however, is divided into seven or more separate arguments. The arguments are not numbered, and they do not specifically reference the issues presented for review. To ensure that this Court addresses all of the the issues presented, we encourage the appellant to coordinate the statement of issues, M.R.A.P. 28(a)(3), with the argument, M.R.A.P. 28(a)(6), in each brief. Likewise, the appellee would be wise to respond with a similar coordination of issues to argument. Here, based on the summary of the argument and the headings, used in Eaton’s brief, we have determined that Eaton has presented two main issues with several related arguments under each issue.

I. The Commission erred in finding total disability.

¶ 26. As to this issue, Eaton argues that the Commission erred in determining that Brown met his burden to demonstrate permanent total disability. Since the award was rendered under Mississippi Code Annotated section 71-3-17(a) (Supp. 2012) rather than the scheduled-member provisions found in section 71-3-17(e)(l), Brown was held to the “most rigorous” test for disability, which requires convincing medical proof of a total disability and a legitimate job search for suitable employment. Brown’s paltry, belated effort to find employment in positions plainly outside his restrictions is not a suitable basis on which to affirm the award of permanent total disability. Likewise, the Commission’s total neglect of the more recent, more comprehensive, and more reliable physician and therapist opinions on Brown’s condition and reliance only on the obsolete, incomplete picture provided by the doctor in the worst position to comment on Brown’s permanent disability was error. The Commission also erred by countenancing Brown’s unreasonable refusal to participate in his medical treatment by skipping the FCE and physiatrist appointments recommended by Dr. Amundson.
A. The Commission erred in not considering contradicting information.
¶27. Eaton argues that the Commission cited only Dr. Dulske’s outdated April 27, 2009, opinion to support its decision. The Commission did not acknowledge that Dr. Dulske’s opinion was contradicted by a *1137 volume of more current medical information, including the opinion of Dr. Geissler and the March 2010 FCE. The Commission did not discuss the surveillance video that demonstrated that Brown was clearly capable of lifting more than one pound with his left upper extremity. The Commission also omitted any reference to the Brown’s testimony that he felt himself employable and his lack of diligence in the job search. Eaton concludes that because the Commission’s award is unsupported by substantial medical evidence of permanent total disability, Brown’s award should be limited to the scheduled member.
¶ 28. Under this heading, Eaton cites no legal authority and provides no specific argument as to how the Commission was in error for not considering contradicting information. The Commission determined that Brown was entitled to permanent total disability benefits based on his scheduled-member injury. The Commission cited Dr. Dulske’s opinion that Brown was not capable of performing even sedentary duties on a sustained and full-time basis. This Court has said “[i]t is not within the realm of a reviewing court’s authority to re-weigh the evidence to determine whether the preponderance of evidence might favor a result contrary to the Commission’s determination. So long as the record contains credible evidence which, if believed, would support the Commission’s determination, we must affirm.” McCarty Farms, Inc. v. Banks, 773 So.2d 380, 387 (¶ 29) (Miss.Ct.App.2000) (internal citation and quotation marks omitted). We do not find the Commission erred by not considering contradicting information.

B. Brawn proved scheduled-member disability only; no medical proof of disability ,attributable to Brown’s cervical condition was provided.

¶ 29. As to this issue, Eaton argues that the Legislature has arbitrarily set out a schedule of maximum benefits payable for injuries to certain enumerated body parts. Miss.Code Ann. § 71-3-17(c); McCarty Farms, 773 So.2d at 386 (¶ 25). In the case of an arm/upper extremity injury, the Legislature has declared an employee is entitled to- up to 200 weeks of compensation absent a determination that the scheduled-member disability has resulted in a total loss of earning capacity. Miss.Code Ann. § 71 —3—17(c)(1); Smith v. Jackson, 607 So.2d 1119, 1128 (Miss.1992). In scheduled-member claims, “no account is taken as to the claimant’s loss of wage earning capacity.” McCarty Farms, 773 So.2d at 387 (¶ 32). However, when the Commission seeks to go beyond the scheduled member benefits, as it did in this case, the Commission must then treat the claim as an injury to the body as a whole and apply the “most rigorous test” for loss of wage-earning capacity. John R. Bradley & Linda A. Thompson, Mississippi Workers’ Compensation § 5:48 (2011); see also Smith, 607 So.2d at 1128. In such a situation, Brown must meet all the criteria necessary to establish a complete and total loss of wage-earning ability; otherwise the award should be limited to the scheduled member.
¶ 30. Eaton claims that the evaluation for disability stemming from an injury to Brown’s arm, as a scheduled member, differs from the evaluation for an injury to the body as a whole. Bradley & Thompson, at §§ 5:2-5:3. In either category, proof of disability “must be supported by medical findings.” Miss.Code Ann. § 71-3 — 3(i) (Rev.2011). Eaton then contends that there is a total absence of any medical evidence of “disability” due to the cervical injury, and the Commission relied on the outdated, incomplete opinion of Dr. Dulske for support of the permanent total disability award.
*1138 ¶ 31. Under this heading, Eaton simply cites legal principles but provides no specific argument as to how the Commission was in error. Eaton concedes that the Commission relied upon Dr. Dulske’s opinion and merely argues that it was “outdated” and “incomplete.” As stated in the previous section, “ ‘[i]t is not within the realm of a reviewing court’s authority to re-weigh the evidence to determine whether the preponderance of evidence might favor a result contrary to the Commission’s determination.’ So long as the record contains credible evidence which, if believed, would support the Commission’s determination, we must affirm.” McCarty Farms, 778 So.2d at 387 (¶ 29) (internal citation and quotation marks omitted). We do not find the Commission erred for the reason set forth under this section of Eaton’s brief.

C. A diligent job search is required to support the award; since it is absent, permanent total disability is precluded.

¶ 32. Under this heading, Eaton argues that Brown’s job search was not diligent, and he did not satisfy the test for permanent total disability. Brown had to “make a reasonable effort to seek employment in either a similar job or something within their limitations.” Cuevas v. Copa Casino, 828 So.2d 851, 858 (¶ 21) (Miss.Ct.App.2002).
¶ 33. In Merit Distribution Services, Inc. v. Hudson, 883 So.2d 134, 137 (¶ 6) (Miss.Ct.App.2004), the employer claimed that the claimant had made no real effort to find a job within her limitations. The claimant, a truck driver, applied for work at five companies. Id. at (¶ 7). She only applied for a trucking position. Id. Also, some of the companies claimed she did not apply for a position with them. Id. The Commission said the conflicting evidence weighed in her favor. Id. This Court found there was evidence she had attempted to find subsequent employment. Id. Thus, there was no error. Id.
¶ 34. This case presents facts similar to Hudson. There was evidence that Brown applied for various jobs at different places. Once the potential employers learned of Brown’s disability, however, he was not hired. Eaton argues that Brown testified that he believed he was employable but did not care if he returned to work. Brown cites Eaton’s human resources manager’s testimony that Eaton had concluded that Brown could not return to work. As in Hudson, the Commission here was presented with evidence that Brown did in fact unsuccessfully seek employment. Hence, we cannot conclude that the Commission’s decision was not supported by substantial evidence. Therefore, we find no error as to this issue.

D. The Commission did not properly consider the opinion of Dr. Geissler, the FCE, or the skipped physiatrist evaluation.

¶ 35. Under this heading, Eaton argues that the opinion of Dr. Dulske, which the Commission relied upon, was not the most reliable opinion available. Thus, Eaton claims that Commission’s exclusive reliance upon Dr. Dulske’s obsolete opinion was error.
¶ 36. Eaton cites Daniels v. Peco Foods of Mississippi, Inc., 980 So.2d 360, 365 (¶ 16) (Miss.Ct.App.2008). There, Daniels argued that her regular treating physician’s opinion carried greater weight than other doctors when resolving conflicts of opinion. Id. The Commission’s decision to reject the opinion of the claimant-selected physician was affirmed because the Commission “provided clear reasons” why it rejected one opinion in favor of the other. Id.
*1139 ¶ 87. Here, Eaton claims that the Commission did not make any attempt to discuss the differences in the opinions of Dr. Dulske or Dr. Geissler, nor did it make a finding as to which was more credible. Rather, the Commission simply relied on Dr. Dulske’s status as the “treating specialist.” In Manning v. Sunbeam-Oster Household Products, 979 So.2d 786, 741 (¶ 17) (Miss.Ct.App.2008), this Court “re-jeet[ed] this distinction between treating and non-treating physicians.”
¶ 38. Eaton argues that Dr. Dulske last evaluated Brown on April 27, 2009. Dr. Dulske did not evaluate Brown after the additional treatment for his cervical-spine condition. He did not have the benefit of the March 2010 FCE. He did not review the records of other physicians. He could not know what additional improvement Brown experienced with additional treatment and recovery time. Dr. Dulske did not review the surveillance footage of Brown “actively raising his arm easily to 90 degrees without hesitation,” exhibiting “active abduction of 90 degrees,” or using his left upper extremity as a helping hand during recreational activities. Dr. Dulske knew only what Brown experienced more than two years before the matter went to hearing. By contrast, Dr. Geissler was the last physician to evaluate Brown. Dr. Geissler had the benefit of the records from both Dr. Dulske and Dr. Amundson, his summary of which covered three single-spaced pages. Dr. Geissler reviewed the surveillance footage previously discussed. Dr. Geissler spent almost an entire single spaced page discussing Brown’s efforts on the FCE, which noted “several ... inconsistencies” and that “[s]elf[-]limiting behavior resulted in the inability to identify maximum work abilities.” Dr. Geissler even had the benefit of his own earlier evaluation of Brown. Dr. Geissler saw Brown for the primary purpose of evaluating Brown’s work ability and examined a “number of parameters” in reaching his conclusion. His report spanned six pages, whereas the narrative records of Dr. Dulske’s treatment were not even entered into evidence. The AJ had to look to Dr. Geissler’s summary to determine what treatment Dr. Dulske offered.
¶ 39. Ordinarily, this Court will defer to the factual findings of the Commission regarding which expert is more credible if those opinions are supported by substantial evidence. See Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988). However, where the finding is clearly erroneous and contrary to the overwhelming weight of the evidence, it must be reversed. Id. “Findings may be determined clearly erroneous, however, if, on the entire record, the reviewing court is left with a firm and definite conviction that a mistake has been made by the Commission in its findings of fact.” Delta Drilling Co. v. Cannette, 489 So.2d 1378, 1381 (Miss.1986).
¶40. Eaton is correct that Mississippi law does not require deference be given to the claimant’s treating physician. Manning v. Sunbeam-Oster Household Prods., 979 So.2d 736, 743 (¶ 25) (Miss.Ct.App.2008). However, that does not mean the Commission is precluded from relying on the treating physician’s opinion. When the Commission has been presented with the testimony of two doctors and after weighing the evidence found one to be more persuasive, there is no error. See Daniels, 980 So.2d at 365 (¶ 16). As the trier of fact, it is the Commission’s job to evaluate and weigh the evidence. Id.
¶ 41. This Court does not make credibility determinations. As long as the Commission’s determination was supported by substantial evidence, it will not be disturbed. The Commission relied on *1140 Dr. Dulske’s opinion. Dr. Dulske assigned a twenty percent impairment to the left upper extremity and opined that Brown could not perform sedentary work on a sustained and full-time basis. Hence, we find evidence to support the Commission’s decision, and we 'are not “left with the definite and firm conviction that a mistake has been made by the Commission in its findings of fact and in its application of the Act.” We find no merit to this issue.

E. Brown believes he is employable.

¶ 42. Under this heading, Eaton argues that when asked whether he feels himself genuinely employable, Brown responded that he is. Eaton contends that since Brown feels himself capable of working, and only applied at positions which were not suitable for him, the Commission erred in finding he is incapable of any type of work.
¶ 43. This issue was discussed in section C above. We note, however, that Eaton cites no authority for the argument under this heading. This Court has held that “[a] party’s failure to cite authority in support of an argument precludes consideration of the issue on appeal.” Griffith v. Griffith, 997 So.2d 218, 225 (¶ 26) (Miss.Ct.App.2008) (citing Boutwell v. Boutwell, 829 So.2d 1216, 1223 (¶ 29) (Miss.2002)). Therefore, we find this issue has no merit.

II. The Commission erred by awarding disability benefits and penalties when Brown was not disabled.

¶ 44. Eaton argues that the Commission’s calculation of benefits was in error for several reasons. The Commission held that Brown was entitled to permanent total disability benefits at the statutory-maximum rate beginning the date of injury and further held that Eaton was liable for a ten percent penalty and eight percent interest on any installments not timely paid. This award is despite the fact that Brown was not “disabled” until nearly four months after his injury.

A. Brown did not Become disabled until August 2007; awarding benefits from April was error.

¶ 45. Eaton claims that Brown was not entitled to benefits from the date of injury (April 10, 2007) but instead was due benefits from the date of his “disability” (August 6, 2007), the date he began missing work. Thus, the award of benefits at $387.68 per week for the seventeen weeks from April 10, 2007, to August 6, 2007, improperly penalized Eaton for not paying benefits that clearly were not due. This error resulted in the payment of at least $10,342.71.86 in benefits not owed.
¶ 46. “Disability” is defined as “incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings.” Miss.Code Ann. § 71 — 3—3(i). Eaton claims that Brown was not disabled until August 6, 2007, when be began to miss work.
¶ 47. Brown claims that the Commission fashioned a method of harmonizing the lump-sum order with the multiple periods of disability, multiple MMI dates for the individual injuries, and multiple permanent impairment ratings arising out of the multiple injuries. Brown claims that this issue is moot because Eaton was given a credit for payments previously made.
¶ 48. Having reviewed the calculation of the lump-sum award, we do not find that the credit has been given to Eaton. We agree that the Commission erred when it declared Brown’s permanent total disability benefits related back to the date of injury. The evidence establishes that Brown was not disabled on the date of *1141 injury because he was able to continue to work until August.
¶ 49. When a claimant is entitled to permanent total disability benefits, his entire disability relates back to the beginning of his rating of temporary disability. Morgan v. J.H. Campbell Constr. Co., 229 Miss. 289, 299, 90 So.2d 663, 667-668 (1956). Furthermore, it would be illogical to conclude Brown was entitled to disability benefits from the date of his injury, as at that time he did not meet the definition of disability. The record established that Brown was injured on April 10, 2007. However, he was able to work and continue to earn wages until August 6, 2007. As a result, Brown was not disabled until August 6, 2007. The award of permanent total disability benefits should relate back to August 6, 2007. As to this issue, we reverse the judgment of the Commission and remand for the Commission to calculate any appropriate adjustments in benefits, penalties, or interest.

B. A correct MMI date is vital to properly calculate the amount of benefits due.

¶ 50. Eaton argues that the Commission erred when it declared that the issue of whether the date of MMI was correct was moot because it found Brown was entitled to permanent total disability benefits.
¶ 51. Mississippi Code Annotated Section 71-3-17(a) provides that compensation for permanent total disability shall be paid as follows: “[S]ixty-six and two-thirds percent (66-2/3%) of the average weekly wages of the injured employee, subject to the maximum limitations as to weekly benefits as set up in this chapter, ... not to exceed four hundred fifty (450) weeks....” Based on this provision, the date of MMI is not necessary for a computation of benefits.
¶ 52. We note, however, that to the extent that MMI may be relevant to determine the amount of penalties and interest owed, issues that we have remanded to the Commission, the Commission may certainly consider MMI to calculate the proper adjustment of penalties or interest owed. Other than as necessary to make the appropriate adjustment on remand, we find no merit to this issue.
¶ 53. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANTS AND THE APPELLEE.
LEE, C.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.