JAMES, J., for the Court:
¶ 1. This' appeal proceeds from a Mississippi Workers’ Compensation Commission order granting temporary total disability benefits, permanent partial disability benefits, and industrial-loss-of-use awards to Jerry Snyder. Snyder cross-appeals seeking an award for loss of earning capacity. We affirm in part, reverse in part, and' remand to the Commission for further proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
¶2. On November 8, 2009, Snyder suffered admittedly compensable injuries to his head and neck, as well as damage to his vision and hearing, as a result of a fall while performing work-related duties as part-owner/manager of a Jani-King franchise. Jani-King provides janitorial services to local businesses on a contract basis. Jani-King’s parent. company is Enmon Enterprises, which is insured by Travelers Property Casualty Company of America (collectively “Enmon”). In February 2010, Snyder fainted due to his initial head injury, causing a fall, which resulted in a left-ankle injury that required surgery.
¶3. Snyder’s treating neurologist, Dr. Diane Ross, examined Snyder on November 17, 2009. Snyder presented to Dr. Ross with complaints of confusion, left-eye pain, dizziness, insomnia, lack of appetite, irritability, nausea, vomiting, and headaches. Dr. Ross recommended that Snyder stay off work and rest. However, in a letter dated June 9, 2010, Dr. Ross opined that Snyder was neurologically clear to return to limited light-duty work, with lim- *544 Rations including, but not limited to, no driving, no operating heavy equipment, no lifting greater than ten pounds, and no exposure to heights. Dr. Ross ultimately diagnosed Snyder with a closed head injury’, with significant concussion and post-concussion syndrome, chrome posttraumatic migraines, disturbance of taste and smell, and visual loss' secondary to the hemorrhage in the optic nerve on the left eye. On November 9, 2010, Dr. Ross released Snyder to return to light-duty work subject to a release from Snyder’s ophthalmologist and orthopedic surgeon. On May 9, 2011, Dr. Ross placed Snyder at maximum medical improvement (MMI) and assigned permanent impairment ratings of 5% for bilateral hearing loss; 20% for loss of vision in the left eye; and 5% for loss to the body as a whole due to posttraumatic migraine headaches. Dr. Ross also advised Snyder to avoid exposure to heat and chemicals, driving at night, working, at heights, operating heavy equipment, working in consistent sunlight, and working eight-hour work days.
¶ 4. Snyder was also treated by Dr. John Sobiesk, an otolaryngologist (ENT), for his sensory 'loss following his initial fall. Dr.’ Sobiesk found that Snyder suffered a flat sensorineural hearing loss in both ears of twenty-five and fifteen decibels and that he was a borderline candidate for hearing aids. Dr. Roger Kelley, a vascular neurologist, treated Snyder for his headaches, loss of sight, and fainting. Dr. Kelley found that the sight issue was permanent and prescribed medications to treat the fainting and headache issues. Dr. Joel Sacks,- a neuro-ophthalmologist, also treated Snyder for his loss of sight, and concluded, that Snyder suffered from a complete loss of sight in nearly fifty percent of his left eye.
¶ 5. Dr. George Salloum, an orthopedic surgeon, treated Snyder for his ' subsequent anide injury. On March 18, 2010, Dr. Salloum prescribed physical therapy three times a week and recommended that Snyder not work until further notice. On June 7, 2010, Dr. Salloum released Snyder to perform light-duty work, with no prolonged standing, walking, or lifting anything heavier than ten pounds. However, due to increased pain in his ankle, Snyder had surgery on December 17, 2010. On March 24, 2011, Dr. Salloum placed Snyder at MMI and assigned a 5% anatomical impairment rating with regard to his left ankle/lower extremity; however, Dr. Sall-oum placed no physical restrictions on Snyder as a result of the left-ankle injury.
¶ 6. Enmon provided indemnity benefits to Snyder for temporary total disability (TTD) at the maximum weekly rate of $414.29, beginning on November 9, 2009, through three-quarters of the week through the week of May 22, 2011. En-mon also provided indemnity benefits for permanent partial disability (PPD). The parties disputed whether Snyder was entitled to additional benefits and a hearing was held before an administrative judge (AJ). Oh July 23, 2013, the AJ entered an order awarding Shyder benefits for industrial loss of use to scheduled members, but found no loss of wage-earning capacity. The AJ stated, “The undersigned-finds no loss of wage-earning capacity in regards to this claim, rather varying degrees of functional loss of use for industrial purposes related to the scheduled members which have assignments of permanent partial medical impairment ratings and some permanent restrictions accompanying the same.” The AJ also ordered that Enmon owed compensation to Snyder as follows:
1. Temporary total disability benefits ' in ' the amount of $414.29[,] commencing on November 9, 2009[,] and [continuing] through May 9, 2011[,] *545 relative to the claimant’s documented vision loss.
2. Permanent partial disability benefits in the amount of $414.29[,] beginning on May 10, 2011[,] and continuing for a period of 50 weeks, illustrative of a 50% loss of vision to the claimant’s left eye.
3. Permanent partial disability benefits in the amount of $414.29 for a subsequent period of weeks commencing after or contemporaneously with the above benefits paid for a period of 15 weeks and signifying a 10% bilateral hearing loss suffered by the claimant.
4. Temporary total disability benefits in the amount of $414.29[,] commencing on December 17, 2010[,] and concluding to and through March 24, 2011.
5. Permanent partial disability benefits in the amount of $414.29 for a period of 26.25 weeks beginning on March 25, 2011[,] and demonstrating a 15% loss of functional use for industrial purposes and relative to the claimant’s left ankle and lower extremity.
¶ 7. On August 9, 2013, Enmon filed a petition for review with the Commission, and Snyder filed a cross-petition for review on August 15, 2013. On December 20, 2013, over the objection by Enmon, the full Commission entered an order that reopened the claim for the limited purpose of receiving additional evidence from Snyder . on his claim for loss of wage-earning capacity.
¶ 8. On June 4, 2014, the Commission affirmed the AJ’s denial of compensation for loss of earning capacity. The Commission also affirmed the AJ’s findings of industrial loss of use for the vision and hearing. However, the Commission reversed the AJ’s order in part by stating: “[W]e do not find adequate proof supporting a finding of industrial loss of use with regard to Claimant’s left ankle • injury[,] and as such we reverse the Order of the [AJ] awarding [Snyder] permanent partial disability benefits in excess of the impairment ratings assigned by [Snyder’s] treating physicians.” As a result, the Commission ordered permanent partial disability benefits beginning on March 25, 2011, and continuing for 8.75 weeks, representing a five percent, industrial loss of use to the left ankle.
¶ 9. Enmon filed a motion for reconsideration, which the Commission denied. Enmon appealed to this Court, and Snyder cross-appealed. Enmon raises the following issues: (1) whether the AJ and Commission erred in finding Snyder’s TTD period overlapped his return to employment; and (2) whether the Commission erred by rendering industrial-loss-of-use awards when Snyder was otherwise specifically found to have sustained no loss of wage-earning capacity. On cross-appeal, Snyder raises the issue of whether the Commission erred in finding Snyder to have suffered no loss of wage-earning capacity considering the effect of his injuries on his overall business.
STANDARD OF REVIEW
¶ 10. The standard of review is limited in regard to review of the decisions of the Commission. Miss. Loggers Self Insured Fund Inc. v. Andy Kaiser Logging, 992 So.2d 649, 654 (¶ 15) (Miss.Ct. App.2008). “The Commission sits as the finder of fact, and it is the ultimate judge of the credibility of the witnesses.” Id. “Reversal is proper only when a Commission order is not based on substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law.” Smith v. Johnston Tombigbee Furniture Mfg. Co., 43 So.3d 1159, 1164 (¶ 15) (Miss.Ct.App.2010). “Our supreme court *546 has also stated that the Commission will only be reversed for an error of law or an unsupportable finding of fact.” Id. (citing Ga. Pac. Corp. v. Taplin, 586 So.2d 823, 826 (Miss.1991)). The Commission’s application of the law is reviewed de novo. Lifestyle Furnishings v. Tollison, 985 So.2d 352, 358 (16) (Miss.Ct.App.2008).
DISCUSSION
I. Whether the AJ and Commission erred in finding Snyder’s TTD period overlapped his return to employment.
¶ 11. Enmon argues that the AJ and Commission erred in finding Snyder’s TTD period overlapped his return to employment. The Commission, in denying Snyder’s claim for loss of wage-earning capacity, found that Snyder “returned to his former status with Jani-King by mid-2010 and all financial evidence provided in this claim show[s] no indication of diminished income.” Based on the Commission’s finding, Enmon ai-gues that Snyder’s TTD payments overlapped his return to employment in mid-June 2010, when he was released by Dr. Ross and Dr. Soull-oum, until December 17, 2010, when he underwent surgery on his anide. Following ankle surgery, Snyder remained on TTD status for fourteen weeks until March 24, 2011, when Dr. Salloum placed Snyder on MMI. On May 9, 2011, Dr. Ross placed Snyder on MMI.
¶ 12. “[TTD] is intended to compensate the claimant during the period of healing following the usual industrial injury. This period is followed by recovery, or stabilization of the condition.” Quitman Knitting Mill v. Smith, 540 So.2d 623, 627 (Miss.1989).
Temporary disability, whether total or partial, has reference to the healing period following injury; it begins with the disabling injury and continues until such time as the employee reaches the maximum benefit from medical treatment, or differently expressed, it is a condition which exists until the injured party is cured or is as far restored as the permanent character of his injuries will permit.
Howard Industries Inc. v. Robinson, 846 So.2d 245, 253 (IT 21) (Miss.Ct.App.2002) (quoting Triangle Distributors v. Russell, 268 So.2d 911, 912 (Miss.1972)). “Retaining substantial wage-earning capacity and being returned by a physician to work while the healing process continues constitutes a temporary partial disability, not a total one.” Id. “Whether and when a claimant has reached maximum medical recoyery are questions which are to be determined by the Commission based on testimony from both lay and medical witnesses.” McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 168 (Miss.1991) (citing Burnley Shirt Corp. v. Simmons, 204 So.2d 451, 453 (Miss.1967)).
¶ 13. In Robinson, we applied the following analysis regarding the award of temporary benefits when the claimant returns to work prior to reaching MMI:
Temporary disability benefits represent a substitute for wages lost by the employee during the period of recovery from injury. If the employee is still technically in recovery, but has returned to work and is suffering no loss of wages, then temporary disability benefits are not payable.
To further refine the point, benefits for temporary total disability are payable when the employee is completely unable to engage in work and is therefore suffering a total, yet temporary, loss of wage[-]earning capacity. Miss.Code Ann. § 71 — 3—17(b) (Rev.1995). Benefits for temporary partial disability are payable when the employee is able to work, but is not earning full pay and is there *547 fore suffering a partial, yet temporary, decrease in wage[-]earning capacity. Miss.Code Ann. § 71-3-21 (Rev.1995).
Robinson, 846 So.2d at 253-54 (¶ 23).
¶ 14. In Flowers v. Crown Cork & Seal USA, Inc., 167 So.3d 188, 193 (¶ 16) (Miss.2014), the Mississippi Supreme Court adopted the Commission’s holding in Hendershot v. Weiser Security Systems Inc., MWCC No. 97-08017-G0280, 1999 WL 377899, at *4 (Miss. Work. Comp. Comm’n May 25, 1999). In Hendershot, the Commission held that “one who is capable of work and is actually working and earning wages during the period prior to reaching maximum medical improvement may not at the same time be regarded as temporarily totally disabled.” Flowers, 167 So.3d at 192 (¶ 14). In Hendershot, “[t]he Commission reasoned that temporary disability within the meaning of the law is an occupational condition which cannot legally or factually co-exist in one who is able to earn and is actually earning wages.” Id. “The date a claimant reaches MMI certainly may coincide with the date he or she is cleared to return to work, but this will not always be the case.” Id. at 193 (¶ 16). “If a claimant has not yet reached MMI but is able to return to his or her usual employment during the recovery process, then he or she is no longer suffering a loss of wage-earning capacity, and disability benefits should not continue.” Id.
¶ 15. Enmon argues that the Commission should clarify its order so that benefits paid during the time period of mid-2010 through December 2010 may be properly credited toward the permanent partial disability award. We agree. The order is ambiguous as it relates to Snyder’s return to work and the award of TTD during the same period of time, specifically from mid-June 2010 through December 2010. The Commission must clarify whether the TTD benefits awarded to Snyder should have ceased upon Snyder’s return to work.
¶ 16. Moreover, the Commission must clarify its order in regard to Dr. Ross’s release of Snyder. The record reveals two different release dates, but the order only explicitly mentions the second release date of November 9, 2010, when Dr. Ross released Snyder to return to light-duty work subject to a release from Snyder’s ophthalmologist and orthopedic surgeon. However, the order also states that Snyder returned to work in mid-2010, which coincides with Dr. Ross’s release date of June 9, 2010, which is reflected on a letter signed by Dr. Ross contained in the record, and Dr. Salloum’s release date of June 7, 2010. In clarifying its order, the Commission must provide its basis for awarding TTD benefits, if any, during the time that it appears Snyder returned to work and was earning wages. If the Commission did not intend to award TTD benefits during this period of time, it must make a specific finding of the dates that Snyder' should be entitled to TTD, if any, or TPD, if any, in compliance with the Mississippi Supreme Court’s decisions in Flowers and Robinson.
II. Whether the Commission erred by rendering industrial-Ioss-of-use awards when Snyder was otherwise specifically found to have sustained no loss of wage-earning capacity.
¶ 17. Enmon also argues that because Snyder suffered no loss of wage-earning capacity, the Commission erred by awarding industrial-loss-of-use awards for scheduled members under Gaston v. Tyson Foods Inc., 122 So.3d 797 (Miss.Ct.App.2013). We disagree. .
¶ 18. “Mississippi Code Annotated section 71-3-17 (Supp.2012) provides compensation for employees for permanent *548 total disability, temporary total disability, and permanent partial disability. In a permanent-partial-disability case, also called a scheduled-member case, the statute, assigns a percentage of compensation for a set number of weeks to be paid to the employee.” Id. at 799-800 (¶ 9). In Ga-ston, this Court stated: “In a scheduled-member case, a worker is always entitled to compensation for the medical or functional loss of his body part, regardless of whether the functional loss impacts his wage[-]earning capacity.” Id. at 800 (¶ 9) (quoting City of Laurel v. Guy, 58 So.3d 1223, 1226 (¶ 14) (Miss.Ct.App.2011)). Furthermore, “compensation for scheduled-member disability is arbitrarily awarded according to which scheduled-member is disabled.” Guy, 58 So.3d at 1226 (¶ 11). “In scheduled-member compensation, the focus is on the functional loss of the body part without regard to loss of wage[-]earning capacity.” Id. And “the law recognizes there may be times when the industrial loss is greater than the medical loss.” Id. at (¶ 14). “In these cases, thq claimant’s industrial or occupational disability or loss of wage-earning capacity controls his degree .of disability.” Id. (quoting Smith v. Jackson Constr. Co., 607 So.2d 1119,1126 (Miss.1992)).
¶ 19. For an employee seeking industrial disability based on a loss to the body as a' whole, he must “prove (l)[a] medical impairment, and (2) that the medical impairment resulted in a loss of wage-earning capacity.” Robinson v. Packard Elec. Div., Gen. Motors Corp., 523 So.2d 329, 331 (Miss.1988). However, Snyder was awarded industrial loss of use based on scheduled members without regard to loss of wage-earning capacity. See Guy, 58 So.3d at 1226 (¶ 11).
¶20. “Loss of wage-earning capacity should be determined by considering-the evidence as a whole.” Gaston, 122 So.3d at 800 (¶ 10). However, “a worker who is earning higher post-injury wages may nonetheless be entitled to an industrial loss greater than his medical loss, although he cannot be compensated for a total loss.” Sanderson Farms Inc. v. Jessie, — So.3d --, -, 2015 WL 4509373, at *3 (¶ 15) (Miss.Ct.App.2015). (quoting Guy, 58 So.3d at 1227 (¶8)). Here, Snyder has not been compensated for a permanent total loss.
¶ 21. Dr. Ross assigned medical impairments of twenty percent to the left eye and five percent for bilateral hearing, and Dr. Salloum assigned a medical impairment rating of five percent to the ankle. Here, the Commission reversed Snyder’s loss-of-industrial-use award of fifteen percent to the left ankle by the AJ, and limited the award to the medical impairment of five percent assigned by Dr. Salloum. Synder’s post-injury wage-earning capacity does not defeat scheduled-member compensation. See Meridian Prof'l Baseball Club v. Jensen, 828 So.2d 740, 745 (¶ 13) (Miss.2002) (acknowledging statutory right to compensation for medical impairment regardless of impact on worker’s ability to perform his job). Likewise, it does not defeat a finding of an industrial loss greater than Synder’s medical loss. See id. (affirming 25% industrial loss based on 7% medical impairment).
¶ 22. In Guy, the AJ failed to consider the claimant’s actual post-injury wage-earning capacity, and this Court reversed the circuit court’s judgment affirming the decision of the Commission, and remanded the case to the Commission (1) to determine whether the claimant experienced an industrial loss less than 100% but greater than his 25% medical loss and (2) to award the claimant the greater of his industrial or medical loss. Guy, 58 So.3d at 1229 (¶ 28). Here, the AJ and Commission considered the evidence as a whole, including *549 a determination of Snyder’s post-injury wage-earning capacity. Snyder is not prevented from recovering industrial-loss-of-use benefits because the- Commission found that he suffered no loss of. wage-earning capacity. See Jensen, 828 So.2d at 750 (¶ 27) (“holding that loss of wage-earning capacity is a factor in whether or not occupational disability is greater than the medical loss of use would indicate.” (emphasis added)). Due to Snyder’s impairments, he is limited with restrictions that affect his ability to perform the janitorial-manager activities that he engaged in prior to his injury, which include being prevented from working in heat, with chemicals, and for full eight-hour days. Here,'Snyder was awarded an industrial loss of use of less than 100%, but greater than or equal to the percentage of medical loss assigned by his physicians. Accordingly, we find that the Commission did not err, and affirm its decision awarding industrial-loss-of-use benefits equal to or exceeding the impairment ratings assigned by Snyder’s physicians relative to his left eye, bilateral hearing, and left ankle, without a finding of loss of earning capacity.
III. Whether the Commission erred in denying Snyder’s loss-of-earning-capacity claim.
¶23. The Commission is the ultimate finder of fact, and the “appellate courts may not reweigh the evidence that was before the Commission.” Conley v. City of Jackson, 115 So.3d 908, 911 (¶ 13) (Miss.CtApp.2013). The Commission’s findings will be reversed only when they are “cleárly erroneous and contrary to the overwhelming weight of the evidence.” Lankford v. Rent-A-Center., Inc., 961 So.2d 774, 777 (¶ 10) (Miss.Ct.App.2007). “This Court will not determine where the preponderance of the evidence lies when the evidence is conflicting, the assumption being that the Commission, as. the trier of fact, has previously determined which' evidence is credible, has weight, and which is not.” ' Miss. Loggers Self Insured Fund, Inc. v. Andy Kaiser Logging, 992 So.2d 649, 654 (¶ 15) (Miss.Ct.App.2008).
¶ 24. On cross-appeal, Snyder is essentially asking this Court to reweigh the evidence and reverse the finding of the Commission that Snyder suffered no loss of earning capacity and to substitute our judgment for that of the Commission. The Commission considered franchisee reports of income generated by Snyder’s franchise from February 2007 through December 2011, which. showed steady increases. Moreover, the Commission considered Snyder’s argument that his injury affected his ability to earn additional income by performing extra work beyond that described in the specified janitorial-services contract. The Commission considered the income from Snyder’s extra work from 2007 through 2011. The Commission also considered Snyder’s federal tax returns from 2007 through 2009. The Commission allowed additional evidence to be considered by entering an order allowing additional tax and wage information. The Commission considered the additional evidence, which consisted of Snyder’s federal tax returns for 2011 through 2012 as well as W-2 wage and tax statements from 2007 through 2012.
¶ 25. The Commission found that “any diminution of income herein that might exist ... could be a result of the poor economic conditions or other outside factors.” The Commission concluded: “After reviewing the financial information as noted above, we are left with the greater weight of the evidence supporting a finding that [Sndyer] has not suffered a loss of wage[-]earning capacity as a result of his work-related injuries.” We find that the Commission’s decision was -based on substantial evidence, and was not arbitrary or *550 capricious or against the overwhelming weight of the evidence. Accordingly, we will not disturb the Commission’s finding of fact that Snyder suffered no loss of wage-earning capacity. This issue is without merit, and the Commission’s finding that Snyder suffered no loss of earning capacity is affirmed.
¶ 26. THE JUDGMENT OF THE WORKERS’ COMPENSATION COMMISSION IS AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANTS/CROSS-APPEL-LEES AND THE APPELLEE/CROSS-APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND WILSON, JJ„ CONCUR.