# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-WC-00352-COA

**DARRYL KEYS**                                                                        **APPELLANT**

**v.**

**MILITARY DEPARTMENT GULFPORT AND**                               **APPELLEES**
**MISSISSIPPI STATE AGENCIES WORKERS'**
**COMPENSATION TRUST**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/04/2021 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | TAYLOR RHUE BRINKLEY |
| ATTORNEY FOR APPELLEES: | COURTNEY TITUS DAVIS |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION | REVERSED AND REMANDED - 05/10/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., McDONALD AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1. Darryl Keys appeals from the Mississippi Workers' Compensation Commission's (Commission) order granting the Military Department Gulfport (Military Department) a credit for indemnity benefits tendered to Keys during the period of June 30, 2017, through October 26, 2017. Based solely on the clear language of Mississippi Code Annotated section 25-3-95(2)(b) (Rev. 2018) and the specific set of facts presented in this case, we find the Commission erred in its determination that the Military Department was entitled to a credit for benefits not ultimately retained by Keys. We therefore reverse the order and remand this case for a calculation of the amount of compensation that the Military Department is indebted

to Keys for unpaid permanent total disability benefits.

## FACTS AND PROCEDURAL HISTORY

¶2. On February 24, 2017, Keys was injured as a result of a slip and fall accident while operating a machine in the course of his employment with the Mississippi Military Department at the National Guard facility in Gulfport, Mississippi. On July 10, 2017, Keys lost his footing and fell at home and became paralyzed and never returned to work. The Military Department began tendering checks constituting indemnity benefit payments to Keys on July 10, 2017. From July 11, 2017, through October 26, 2017, Keys received his paid sick leave that he had accrued during the course of his employment. During this period, Keys assigned the indemnity benefits payments back to the Military Department according to Mississippi Code Annotated section 25-3-95(2)(b). Therefore, Keys did not retain or receive the monetary benefits of the payments tendered during this period of time. Keys filed his petition to controvert with the Commission on March 5, 2019. The Administrative Judge (AJ) entered an amended order on June 19, 2020, finding Keys was permanently totally disabled and ordering the Military Department and its insurance carrier to pay permanent total disability benefits to Keys beginning on June 30, 2017, Keys's date of disability. The amended order was not appealed and became final.

¶3. On July 21, 2020, Keys filed a motion for lump-sum satisfaction of the amended order awarding permanent total disability benefits. Keys's motion was granted on August 7, 2020; the Military Department and its carrier were ordered to pay Keys lump-sum benefits pursuant to the amended order. Thereafter, on August 20, 2020, Keys filed his motion for payment of

back-owed benefits and a determination of proper credits. Keys argued that the Military Department was not entitled to receive a credit for the benefit payments issued from July 11, 2017, through October 26, 2017, because those checks were assigned to the Military Department and those benefits were withheld from him pursuant to section 25-3-95(2)(b). He further requested that the Military Department be ordered to pay him for those benefits improperly withheld from July 11, 2017, through October 26, 2017. The Military Department filed its response on September 4, 2020, and argued that it was entitled to a credit for prior payments because Keys had elected to receive sick-leave pay during the period in question and was restricted from receiving more than one hundred percent of his salary according to the terms of section 25-3-95(2)(b).

¶4.     The AJ entered an order on September 24, 2020, denying Keys's motion for back-owed benefits and granting the Military Department a credit for the payments from July 11, 2017, through October 26, 2017. Keys then filed his petition for a review by the full commission on October 9, 2020. Thereafter, on March 4, 2021, the Commission affirmed the AJ's September 24, 2020. Aggrieved, Keys appeals from the Commission's order.

**STANDARD OF REVIEW**

¶5.     Generally, "[t]he standard of review is limited in regard to review of the decisions of the Commission." *Enmon Enters. v. Snyder*, 175 So. 3d 541, 545 (¶10) (Miss. Ct. App. 2015). However, this Court "review[s] an administrative agency's interpretation of a statute governing the agency's operation de novo, without deference to the agency's interpretation of the statute." *Miss. Mfrs. Ass'n Workers' Comp. Grp. v. Miss. Workers' Comp. Grp.*

3

*Self-Insurer Guar. Ass'n*, 281 So. 3d 108, 114 (¶24) (Miss. Ct. App. 2019). "Reversal is proper only when a Commission order is not based on substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law." *Enmon Enters.*, 175 So. 3d at 545 (¶10).

## ANALYSIS

¶6.     The issue raised in this case is whether section 25-3-95(2)(b) applies to the compensation benefits that the employer, Military Department, was ordered to pay to the claimant, Keys. Underlying Keys's challenge to the order granting the Military Department a credit for prior benefits and Keys's request for payment of back-owed benefits is a challenge to the Commission's interpretation of section 25-3-95(2)(b). Specifically, Keys asserts that the Commission misapplied section 25-3-95(2)(b) because the statute's payment restrictions only pertain to claimants receiving temporary disability benefits, and he was awarded permanent total disability benefits.

### I.     Scope of Section 25-3-95(2)(b)

¶7.     To begin, this Court must determine the proper application of section 25-3-95(2)(b). We "will not engage in statutory interpretation if a statute is plain and unambiguous." *Lewis v. Hinds Cnty. Cir. Ct.*, 158 So. 3d 1117, 1120 (¶6) (Miss. 2015). "Where a statute is unambiguous, the Court must apply the statute according to its plain meaning, refraining from principles of statutory construction." *Battise v. Aucoin*, 311 So. 3d 588, 591 (¶11) (Miss. 2021). Our supreme court has previously stated:

> No principle is more firmly established, or rests on more secure foundations, than the rule which declares when a law is plain and unambiguous, whether it

4

be expressed in general or limited terms, that the Legislature shall be deemed to have intended to mean what they have plainly expressed, and, consequently, no room is left for construction in the application of such a law.

*Lewis*, 158 So. 3d at 1122 (¶13). "The [C]ourt may not enlarge or restrict a statute where the meaning of the statute is clear." *Tillis v. State*, 43 So. 3d 1127, 1131 (¶9) (Miss. 2010).

¶8. Section 25-3-95(2)(b) states the following:

When an employee's absence is due to a work-related injury for which the employee is receiving *temporary disability benefits* under *Section 71-3-17(b)* or 71-3-21, the injured employee shall not use accrued personal and/or medical leave and receive workers' compensation benefits simultaneously if the combined receipt of both benefits results in the employee being paid, while absent due to the work-related injury, a total amount that exceeds one hundred percent (100%) of his wages earned in state employment at the time of injury. In such cases, the injured employee may use only as much of his accrued personal and/or medical leave as necessary, which may be fewer than eight (8) hours of accrued personal and/or major medical leave in a day, to constitute the difference between the amount of *temporary disability workers' compensation benefits* received and one hundred percent (100%) of his wages earned at the time of injury in state employment. It is the intent of the Legislature that no state employee who is absent and disabled from work due to a work-related injury shall receive more than one hundred percent (100%) of his wages earned in state employment at the time of injury through the use of accrued personal and/or medical leave combined with *temporary disability benefits* under the Workers' Compensation Law.

Miss. Code Ann. § 25-3-95(2)(b) (emphasis added).

¶9. The plain language of section 25-3-95(2)(b) explicitly uses the term "temporary disability benefits" three times, each in conjunction with reference to the workers' compensation benefits received. Section 25-3-95(2)(b) also specifically points to the subsection of the workers' compensation statute that defines a temporary disability. The context of section 25-3-95(2)(b) differentiates between the types of workers' compensation benefits and only includes temporary disability benefits within the scope of the statute.

## II.    Application of Section 25-3-95(2)(b)

¶10.    Under Mississippi law, "[w]hen a claimant is entitled to permanent total disability benefits, his entire disability relates back to the beginning of his rating of temporary disability." *Eaton Corp. v. Brown*, 130 So. 3d 1131, 1141 (¶49) (Miss. Ct. App. 2013). In *Eaton*, this Court held that "[t]he award of permanent total disability benefits should relate back to" the date the claimant was adjudged to be permanently totally disabled. *Id*.

¶11.    The AJ's amended order entered on June 19, 2020, reads in part:

> ORDERED AND ADJUDGED, that employer and carrier pay compensation benefits to the claimant as follows:
>
> 1.    Permanent total disability benefits beginning on June 30, 2017, and concluding after 450 weeks in accordance with the Act, subject to proper credit for any and all wages, benefits or monies previously paid, pursuant to § 71-3-17(a), Mississippi Code Annotated.

As in *Eaton*, Keys's award of permanent total disability benefits relates back to June 30, 2017. Thus, we find it clear that based on the particular set of facts in this specific case, Keys was awarded permanent total disability benefits beginning on June 30, 2017.

¶12.    We find it important to acknowledge the narrow application of our ruling in this matter based on the specific facts of this case. The record here shows that neither the claimant nor the employer or carrier filed a petition to controvert at the time of the injury; rather, the petition to controvert was not filed until over two years after the claimant's injury. Therefore, because the specific facts in this case show there was not a previous AJ order from June 2017, officially classifying Keys as "temporarily disabled" until he reached maximum medical improvement (thus allowing the extent of his disability to be

6

re-evaluated), caselaw holds that the AJ's one and only order rating Keys's disability as "permanent," entered on June 19, 2020, relates back to the date of injury and precludes the AJ from retroactively declaring that Keys is entitled to both temporary benefits and permanent benefits. *See Eaton*, 130 So. 3d at 1141 (¶49).

¶13. Additionally, we find it beneficial to recognize that employers and carriers do not have the authority to classify the type of compensation benefits a claimant receives; only an AJ and the Commission have the authority to classify the degree of disability and the claimant's compensation benefits. *See Cockrell Banana Co. v. Harris*, 212 So. 2d 581, 585 (Miss. 1968) ("Naturally, neither the date of maximum medical recovery nor the determination of the percentage of apportionment are questions for determination by the employer or carrier."). The record indicates that the employer elected to begin making indemnity benefit payments to the claimant before the AJ had officially determined the claimant's degree of disability. As discussed in the preceding facts section of our opinion (*see supra* ¶2) and in the specially concurring opinion (*see post* ¶¶18-25), we are mindful of the fact that Keys did not receive and retain the payments tendered during the period at issue. Thus, we acknowledge that it follows that Keys did not actually receive the benefit of the workers compensation payments. Notably, the employer's prompt and voluntary payment of indemnity benefits was well-intentioned, and we find this action meritorious; our ruling is not intended to discourage such actions in the future. But because an official determination was not made on the record as to the proper classification of the benefits Keys was entitled to receive before the employer independently began making payments, any indemnity benefit payments between the date of

the injury and the date of the AJ's order were made voluntarily, and they cannot be officially classified as "temporary disability benefits."

¶14. Further, as the specially concurring opinion contends, if the implementation of the payment of the workers' compensation benefits were presented in a manner more consistent with the purpose of section 25-3-95(2)(b), the procedures would have ensured that Keys actually received the benefit of the payments and then subsequently allowed Keys to use accrued leave time to make up the difference between his workers' compensation and pre-injury wages. But as the statute is written, the Military Department took action in accordance with the procedures set out by the Department of Finance and Administration (DFA). The authority to set forth these procedures was granted to the DFA by the Legislature; specifically, "[t]he procedure for implementing this paragraph (b) shall be as directed by the applicable appointing authority." Miss. Code Ann. § 25-3-95(2)(b).

¶15. Because Keys was specifically awarded permanent total disability benefits, section 25-3-95(2)(b) does not apply to the workers' compensation benefits at issue in this particular case regarding what Keys was entitled to receive under these specific facts. Therefore, in this limited circumstance, it follows that Keys is due disability compensation that he did not receive during the period of June 30, 2017, through October 26, 2017, and the Military Department cannot claim a credit for the benefits payments that were assigned back to the Military Department under section 25-3-95(2)(b).

## CONCLUSION

¶16. This Court finds that the Commission erred when it erroneously applied section

25-3-95(2)(b) to Keys's claim and determined that the Military Department was entitled to a credit for prior benefit payments. Therefore, we reverse and remand the case for further determinations consistent with this opinion and specifically for a calculation of the amount of compensation the Military Department is obligated to remit to Keys for unpaid permanent total disability benefits from June 30, 2017, through October 26, 2017.

¶17.   **REVERSED AND REMANDED.**

 **BARNES, C.J., CARLTON , P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR. WILSON, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY McCARTY, J.**

 **WILSON, P.J., SPECIALLY CONCURRING:**

¶18.   Although I agree that the Military Department is not entitled to credit for the checks that Keys endorsed back to the Military Department, I do not believe that this issue turns on whether the checks were issued for a temporary or permanent disability or the applicability of Mississippi Code Annotated section 25-3-95(2)(b) (Rev. 2018).  Because Keys was awarded the maximum total recovery under the Workers' Compensation Act, the Military Department is entitled to a credit for *any* compensation actually paid to Keys regardless of whether it was paid for a temporary or permanent disability.  However, the Military Department is not entitled to credit for the checks at issue because Keys immediately endorsed those checks back to the Department and received no benefit from them.

¶19.   The issue in this appeal is whether the Military Department is entitled to credit for checks the Mississippi State Agencies Workers' Compensation Trust issued to Keys from June 30, 2017, to October 26, 2017.  The parties agree that Keys was entitled to workers'

compensation benefits during that time period, but they disagree as to the nature of those benefits. The Military Department contends the checks were issued to Keys as compensation for a then-temporary total disability, while Keys says they were compensation for a permanent total disability that began on the date of his injury. The parties believe that the permanent or temporary nature of the disability during the relevant time period is legally significant based on Mississippi Code Annotated section 25-3-95(2)(b). That statute limits state employees' use of accrued leave time while they are receiving workers' compensation benefits but applies only when "the employee is receiving *temporary* disability benefits." *Id.* (emphasis added). The parties' respective positions both have at least arguable support in our precedent. On one hand, "[i]t is well established that a claimant cannot receive permanent disability benefits until he or she has reached MMI," *Barber Seafood Inc. v. Smith*, 911 So. 2d 454, 460 (¶25) (Miss. 2005), and the parties stipulated that Keys did not reach MMI until 2019. But on the other hand, "[w]hen a claimant is entitled to permanent total disability benefits, his entire disability relates back to the beginning of his rating of temporary disability." *Eaton Corp. v. Brown*, 130 So. 3d 1131, 1141 (¶49) (Miss. Ct. App. 2013) (citing *Morgan v. J.H. Campbell Constr. Co.*, 229 Miss. 289, 299, 90 So. 2d 663, 667-668 (1956)). Thus, the question arises: during the relevant time period, was Keys under a temporary disability because he had not reached MMI, or was he already under a permanent disability because his entire disability relates back to the date of his injury?

¶20. Although the answer to that question and the proper characterization of a disability as temporary or permanent may be important in some cases, it should not matter here. In this

10

case, the administrative judge found that Keys was permanently and totally disabled and awarded him 450 weeks of benefits at the maximum weekly rate. For a single injury, an employee's maximum total recovery "shall not exceed the multiple of four hundred fifty (450) weeks times [the maximum weekly rate]." Miss. Code Ann. § 71-3-13(2) (Rev. 2021). The employee's maximum total recovery is a limit on the sum of all disability payments—temporary and permanent—that the employee receives. John R. Bradley & Linda A. Thompson, *Mississippi Workers' Compensation Law* § 5:9 (2021 ed.). Therefore, if *any* benefits—temporary or permanent—were actually paid to and received by Keys during the relevant time period, the Military Department would be entitled to credit for those payments. Otherwise, Keys's total recovery would exceed the statutory maximum.

¶21. Nonetheless, I would hold that the Military Department is not entitled to a credit for the checks at issue because Keys never received any workers' compensation benefits during the relevant time period. It is undisputed that pursuant to instructions from the Department of Finance and Administration (DFA), Keys endorsed those checks back to the Military Department, that he never actually received any workers' compensation payments during the relevant time period, and that he instead used his accrued leave time during that time.[1] It would elevate form over substance to now give the Military Department credit for benefits that it never actually paid to Keys. An employer should not receive credit for payments that,

---

[1] The checks were issued by one state entity (the Mississippi State Agencies Workers' Compensation Trust), and Keys endorsed the checks back to a different state entity (the Military Department). However, the Military Department has not suggested that the distinction between the Trust and the Military Department has any legal significance in the present case.

11

in substance, flowed from the carrier to the employer with no benefit to the employee.

¶22. It is worth noting that the Military Department could have avoided the dispute in this case by applying section 25-3-95(2)(b) in a manner more consistent with the language and apparent intent of the statute.[2] The statute provides that it applies only "[w]hen an employee's absence is due to a work-related injury for which the employee is receiving temporary disability benefits." Miss. Code Ann. § 25-3-95(2)(b). In other words, the statute contemplates that an employee who is subject to the statute actually will be "*receiving temporary disability benefits*," *id.* (emphasis added)—not just checks that he immediately endorses back to his employer. In addition, the statute provides that

> [i]n such cases, the injured employee may use only as much of his accrued personal and/or medical leave as necessary, which may be fewer than eight (8) hours of accrued personal and/or major medical leave in a day, to constitute the difference between the amount of temporary disability workers' compensation benefits received and one hundred percent (100%) of his wages earned at the time of injury in state employment.

*Id.* Thus, the statute also contemplates that the "employee may use only as much of his accrued . . . leave as necessary" to make up the difference between the workers' compensation benefits he is receiving and his pre-injury wages. *Id.*

¶23. If the statute had been applied in this manner, the protracted litigation over this dispute—which concerns a total of about $7,000—could have been avoided. If Keys simply had been paid the workers' compensation benefits to which he was entitled, the Military Department clearly would be entitled to credit for those payments. *See supra* ¶20. Keys still

---

[2] Nothing in this opinion is intended as a criticism of the Military Department, which apparently followed instructions from DFA. I refer to the Military Department only because it is Keys's employer.

could have used accrued leave to make up the difference between his workers' compensation benefits and his normal wages. But his accrued leave would have lasted longer because he could have used "fewer than eight (8) hours" per day to make up that difference. Miss. Code Ann. § 25-3-95(2)(b). In that manner, Keys would have received the full benefit of *both* the workers' compensation benefits to which he was entitled *and* the leave he had accrued—and there would have been no dispute to litigate.

¶24. Offering Keys the option of endorsing his workers' compensation checks back to his employing agency created an unnecessary legal problem in this case. Moreover, the Military Department now argues that by selecting that option, Keys unwittingly and unnecessarily used significant accrued leave as a *substitute* for workers' compensation benefits that Keys was legally entitled to receive. While I believe the Military Department's argument is flawed for the reasons noted above (*see supra* ¶21), there is no good reason for a state agency to induce an employee to use accrued leave as a substitute for workers' compensation benefits that the employee is entitled to receive.

¶25. In summary, I concur with the majority that the Military Department is not entitled to a credit for the checks at issue and that the decision of the Commission must be reversed. I further note that state agencies could avoid this problem in the future by applying section 25-3-95(2)(b) in a manner more consistent with the language and apparent intent of the statute.

**McCARTY, J., JOINS THIS OPINION IN PART.**